IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN VOLTZ, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> ASM AMERICA INC., : <br> : <br> Defendants. : <br> : | Civil Action <br><br> No. 23-cv-01759 |

MEMORANDUM

J. Younge                                                                                              July 10th, 2024

I.   INTRODUCTION

Currently before this Court are Defendant ASM America Inc.'s Motion for Summary Judgment (ECF No. 31)[1] and Plaintiff John Voltz's Motion for Summary Judgment (ECF No. 32).  The Court finds these Motions appropriate for resolution without oral argument.  Fed. R. Civ. P. 78; L.R. 7.1(f).  For the reasons set forth in this Memorandum, these Motions are Denied.

II.   FACTUAL BACKGROUND

Plaintiff Voltz was employed at Reno Sub Systems, Inc. ("Reno"), a manufacturer of products for the semiconductor industry. Reno was acquired by Defendant ASM America Inc. ("ASM") on March 16, 2022, through a stock purchase acquisition (Amended Complaint, ¶¶ 2-4, ECF No. 9.). This dispute is centered around the Plaintiff's allegation that ASM failed and refused to pay commissions resulting from the sale of $8 million dollars in company products following its merger with Reno.  When the Plaintiff was hired, Robert B. MacKnight

---

[1] When applicable, the Court adopts the pagination supplied by the CM/ECF docketing system, which does not always match the document's internal pagination.

("MacKnight"), served as the President and CEO of Reno. On January 5, 2018, MacKnight had offered Mr. Voltz employment for which he would receive a salary as well as variable compensation contingent on performance. According to Exhibit A in the Amended Complaint, Mr. Voltz was to be paid $190,000 in addition to the variable compensation that was to be agreed upon through further discussion (*Id*. at ¶ 9, ECF No. 9). The parties ultimately agreed to a variable compensation arrangement known as the "Commission Plan" which allowed Voltz to receive "a percent of gross sales, based upon recognized revenue and gross margin as a percent of budget." (*Id*. at ¶ 9, ECF No. 9). According to Exhibit C, in the Amended Complaint, the Commission Plan stipulated that Voltz would receive half of the owed amount upon shipment of the sales, with the remaining half paid upon collection of payment for the sales. (*Id*. at ¶ 10, ECF No. 9). Voltz and Reno had an established business practice where Voltz received full payment one month after the end of the quarter during which the sales were shipped. (*Id*.). Prior to ASM closing on the acquisition of Reno, Voltz secured approximately $8 million in sales and orders for Reno's products. These orders had been received and accepted by Reno months earlier. ASM has never contested that these orders were fulfilled and paid for. (*Id*. at ¶ 14, ECF No. 9). In November for 2021, Mr. Voltz reached out to Kristy Dunn, ASM's "Head of People," to ascertain whether ASM would uphold the agreement to compensate Voltz for the earnings he accrued from the orders he secured, and that would be or already had been shipped. Her response indicated that Reno would be accountable for "clearing the books" prior to the merge. (*Id*. at ¶ 15, ECF No. 9).

      Mr. Voltz then followed up with MacKnight during the same month to further understand whether he would be receiving payment for the earned commissions. MacKnight responded that he could not guarantee any results but that he would make his best efforts to "ensure proper

treatment." (*Id*. at ¶ 16, ECF No. 9). In January of 2022, Mr. Voltz emailed James Foster, the ASM employee responsible for transitioning Mr. Voltz into ASM. Once more, the email from Mr. Voltz questioned the status of pending compensation and reiterated his right to earned commissions, highlighting how ASM benefits from the orders generating those commissions. Mr. Foster responded with: "It is ASM's position that we will not take on this plan after the acquisition of Reno is finalized…" (*Id*. at ¶ 19, ECF No. 9). In March of 2022, ASM presented Mr. Voltz with a Release in connection with his "Change of Control Incentive Plan." This Release excluded "any claim, demand or cause of action, or any of your rights to…accrued but unpaid compensation" including salary, commissions, work related expenses, and similar claims for amounts earned while working for Reno, stating that "nothing in the release shall be deemed to constitute a release or waiver by you of any such claim." (*Id*. at ¶ 22, ECF No. 9). Based on the language of the Release, Mr. Voltz assumed that his claims for unpaid compensation would be excluded from the Release. (*Id*. at ¶ 23, ECF No. 9). ASM, however, takes the position that with Mr. Voltz signing the Release, he essentially agreed to receive a cash payment of $248,550 pursuant to the Change of Control Payment Incentive Plan, and in return, waived his rights to "commence any action before any court, arbitrator or governmental entity against any Released Party based on any Released Claim." ("Exhibit K - Incentive Plan Payment and Release of Claims", ECF No. 31). However, in the Release, the exception contains the term "unpaid compensation" absent any clear parameters defining this term. The exception contained in the Release creates an ambiguity with regard to the interpretation of the language of the Release.

      Plaintiff filed his Complaint on May 8, 2023. On June 29, 2023 the Defendant filed a Motion to Dismiss Plaintiff's Complaint Pursuant to 12(b)(6), based on Plaintiff's Prior Release of All Claims. Plaintiff responded by filing an Amended Complaint against the Defendant

alleging claims of breach of contract, a violation of the Pennsylvania Wage Payment and Collection Law ("WPCL"), and accounting. The parties appropriately conducted discovery wherein responses to written discovery have been exchanged and five depositions were taken. All necessary discovery has been completed.

### III.     LEGAL STANDARD

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). To defeat a motion for summary judgment, there must be a factual dispute that is both material and genuine. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 24-49 (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). A material fact is one that "might affect the outcome of the suit under the governing law". *Anderson*, 477 U.S. at 248. A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id*.

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). When the movant is the defendant, they have the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.,* 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains their initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotations omitted) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

There are genuine disputes of material facts in this case that preclude summary judgment for either party. Both parties allege a different version of facts regarding the breach of contract claim. ASM claims the initial letter between Reno and the Plaintiff on January 5, 2018 was not a contract of employment. Mr. Voltz, however, alleges that he had payment terms contained within the provisions of the Commission Plan, as an agreement wherein the terms of the commission were negotiated. ASM contends this finding, and takes the position that Mr. Voltz's employment commenced as an at-will employee, allowing him to be terminated at any time. ASM further alleges that the offer letter indicates a lack of mutual assent. This disagreement regarding the existence of an employment contract is a dispute for the factfinder to determine.

Additionally, when Mr. Voltz signed the Release, he believed that it excluded any claims to accrued unpaid compensation. ASM alleges that since Mr. Voltz knowingly signed the Release, and accepted a cash payment of $248,550 in exchange, he has forfeited the opportunity to assert any claims against both Reno and ASM. ASM further asserts that the exception to the

wavier of claims only involved accrued commissions whereas Mr. Voltz's commission was unaccrued. Mr. Voltz responded to this by alleging that the word "accrued" does not even exist in the Commission Plan. These factual disputes regarding the interpretation of the Commission Plan and whether unaccrued or accrued commissions should be considered prevent any justification for granting summary judgment to either party.

Disputes remain regarding certain undefined terms in the Commission Plan, particularly whether Mr. Voltz "earned" his commissions and when said commissions should be classified as "accrued versus unaccrued". Essentially, ASM argues that for the Plaintiff to have earned his commission, the product must have been shipped to, and paid for, by the customer. Mr. Voltz argues that his commissions should have been calculated as a percentage of the total sales of the products sold. According to Mr. Voltz, his payout would be due to him after the shipment and payout dates.

Lastly, in the Second Count of the Amended Complaint, Mr. Voltz alleges a violation of the Pennsylvania Wage Payment and Collection Law ("WPCL") as a derivative of his breach of contract claim. Mr. Voltz takes the position that ASM failed to pay the earned wages in the amount of $287,835, that was due to him before his employment with Reno ended on March 16, 2022 (Amended Complaint, ¶36, ECF No. 9.). Voltz contends that ASM's classification of compensation into the categories of accrued or unaccrued is an excuse to invalidate the third count of his claim. He claims his compensation should have been accounted for after he left the defendant's employment. ASM counters this by asserting that ASM never had an employment contract with the Plaintiff, and therefore the WPCL wouldn't apply. ASM further alleges that even if a contract was in place, between them and the Plaintiff, ASM wasn't obligated under it because none of the commissions sought were earned prior to his termination with Reno. These

remaining issues of fact as to validity of the third count make summary judgment inappropriate in this case.

## V. CONCLUSION

For the foregoing reasons, Defendants ASM's Motion for Summary Judgment and Plaintiff John Voltz's Motion for Summary Judgment are Denied.

An appropriate Order follows.

**IT IS SO ORDERED.**

BY THE COURT:

/s/ John Milton Younge
**Judge John Milton Younge**